## In re THREE MILE ISLAND LITIGATION.

### Civ. A. No. 79–0432.

United States District Court,
M.D. Pennsylvania.

Dec. 9, 1982.
As Amended Dec. 29, 1982.

David Berger, P.A., Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., F. Lee Bailey & Aaron J. Broder, New York City, Barrack, Rodos & McMahon, Beasley, Hewson & Casey, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., Hepford, Zimmerman & Swartz, Jameson & Milspaw, Barry A. Roth, Harrisburg, Pa., Stock & Leader, York, Pa., Stoll & Stoll, Portland, Or., for plaintiff.

## MEMORANDUM

RAMBO, District Judge.

On September 9, 1981 this court entered final judgment in the Three Mile Island (TMI) class action for economic losses attributable to the 1979 nuclear accident at Reactor Number 2. The judgment resulted from a settlement agreement between the defendants, various companies which owned, operated, designed, constructed and maintained TMI, and plaintiffs' executive committee, a group of ten law firms appointed by the court to coordinate the prosecution of the many cases filed in this court following the nuclear incident. Before approval of the settlement plaintiffs' counsel involved in the case filed their requests for awards of counsel fees and reimbursement of costs related to the litigation. The court has carefully reviewed each petition and will award fees and expenses in accordance with the standards expressed after the background statement below.

*Background*

Plaintiffs began filing lawsuits in this court within days of the nuclear accident at TMI which began on March 28, 1979. Some were individual suits, others were pleaded as class actions. These suits sought compensatory, punitive and injunctive relief. On May 25, 1979 the first pretrial conference was held by United States Magistrate John Havas. He ably directed the organization of the cases during the initial stage of the litigation. A degree of order was finally achieved when most of the TMI cases were joined into one class action to proceed under a consolidated complaint. In September 1979 the parties agreed to class treatment of Classes I and II, composed respectively of businesses and individuals seeking damages for economic losses. Whether a class should be certified to represent Class III, those claiming physical injuries as a result of the accident, remained a contested issue. Magistrate Havas conducted an evidentiary hearing on the personal injury class question. Plaintiffs and defendants filed legal memorandums to support their positions regarding certification of this class. During the same period the court requested written briefing on the question of federal subject matter jurisdiction over the lawsuit.

The court filed its opinion on class certification and jurisdiction on July 10, 1980. In essence, the parties' stipulation with respect to Classes I and II was approved by the court. The court affirmed the Magistrate's recommendation to deny class treatment generally to Class III, but to grant class

treatment on the issue of entitlement to medical detection services.[1]

During 1979 and 1980 plaintiffs organized and began their development of the factual record needed for trial. The highly technical nature of the nuclear industry and the need to explore the long term health effects of the incident necessitated the hiring of experts for consultation. In tandem with trial preparation, settlement negotiations were also undertaken. Once the class status was determined, the parties and the court devoted time to the design of legal notice to be sent to the class members and the development of claim forms for those expressing a desire to participate in the lawsuit. There were several meetings with the court to discuss both notice and the progress of settlement negotiations. After nearly a year of negotiation, a proposed settlement was signed on February 17, 1981. The parties began a redraft of the class notice to describe the proposed settlement. Six hundred thousand notices informing class members of the lawsuit and proposed settlement were mailed in May of 1981.

In the period prior to a court hearing on the proposed settlement, plaintiffs' executive committee continued to function. Though trial preparation was no longer necessary, the parties had to hire and prepare witnesses for the court hearing in August. The hearing was to determine whether the court should approve the settlement.

Under the terms of the settlement a twenty-five million dollar fund was established. Twenty million dollars of the fund are available to pay claims from members of Classes I and II. The remaining five million dollars were set aside for a Public Health Fund. The purpose of the fund is to finance studies of the long term health effects of the TMI incident and to further evacuation planning for the future.

*Award of Fees*

The Court of Appeals for the Third Circuit has been a leader in the development of the law governing federal court awards of attorneys fees. In *Lindy Brothers Builders v. American Radiator and Standard Sanitary Corporation,* 487 F.2d 161 (3d Cir.1973) *(Lindy I),* it described these four steps which the district court should follow in computing attorneys fees:

1) A determination of the number of hours spent by each attorney and the manner in which they were spent;

2) An evaluation of the reasonable hourly rate for each lawyer's time;

3) A determination of the contingent nature of the success of the lawsuit;

4) A determination of the quality of the attorneys' work.

Steps one and two are commonly referred to as the calculation of the "lodestar." The court decides what is a reasonable hourly rate for each attorney on the basis of his or her experience and the customary billing rates in the area where the attorney practices.[2] It also looks at the number of hours the attorney spent on the case and determines whether the hours were reasonable in light of the tasks that had to be performed. *Hughes v. Repko,* 578 F.2d 483, 487 (3d Cir.1978). Once the hourly fee and the number of hours are approved, one is multiplied times the other to arrive at the lodestar figure.

The formula is relatively simple in statement, but more subtle in application. The equitable fund doctrine requires that the fund only compensate for those hours that contributed to the creation, increase or protection of the fund. *Lindy Brothers*

---

1. Plaintiffs represent three classes limited to those living, working or conducting business within a twenty-five mile radius of TMI reactor number two. Class I consists of business entities which suffered economic harm as a result of the accident. Class II consists of all individuals who suffered economic harm, such as evacuation expenses, lost wages, and decline in property value as a result of the accident.

Class III consists of all individuals who seek the fair and reasonable cost of securing medical detection services alleged to be necessary as a consequence of the TMI accident.

2. In this case Magistrate Havas, at an early stage, requested that the firms on plaintiffs' executive committee submit a statement of their hourly billing rates.

*Builders v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 110 .(3d Cir.1976) *(Lindy II).* With this in mind, the court excluded from the lodestar calculations those hours attributable to contact with private clients that were unrelated to initial investigation and drafting of the complaint or a court appearance at proceedings such as the certification hearing. The Third Circuit has also instructed that "hours spent on purely clerical matters, easily delegable to non-professional assistants, should not be valued at legal service rates." *Prandini v. National Tea Co.*, 557 F.2d 1015, 1020 (3d Cir.1977). There were instances in these petitions were an attorney was seeking recompense at the attorney rate for time spent copying documents or acting as a courier. With these guidelines in mind the court will discuss the contributions of the various firms to the litigation and determine the reasonable hourly rates and time.

### David Berger, P.A.

The Berger firm of Philadelphia has a nationwide reputation for handling class, complex and multidistrict litigation. David Berger and his firm were responsible for the organization of plaintiffs' counsel. David Berger served as liaison counsel between plaintiffs' executive committee, which he chaired, and the court. His skills in negotiation certainly helped plaintiffs achieve a settlement.

The firm was involved in all aspects of the litigation, including the milestone junctures such as class action certification, settlement negotiations and class action notice procedures. The firm undertook primary responsibility to conduct investigations into the merits of the economic loss and medical detection cases, retained and worked with the experts on these matters, advanced most of the costs of the litigation and coordinated the preparation for trial. Once the proposed settlement was presented to the court, this firm proceeded to arrange for the mechanics of mailing notice to area businesses and residences. Its coordination efforts with World Wide Marketing, Inc., the company that actually did the mailing, resulted in a notice operation that was smooth and effective.

The court recognizes that the role the Berger firm undertook necessarily resulted in a large commitment of manpower. Nevertheless, in reviewing the manner in which each attorney spent his or her time, the court found that there was some duplication of effort; that is more attorneys were involved in particular tasks than called for by the work. No specific hours have been deleted, but this factor became a consideration in the court's appraisal of the quality of the work performed.

Expenses advanced by David Berger, P.A. will be reimbursed in the amount of $176,056.94.

The hourly rates requested for members of the firm are as follows:

| Attorney | 4–79 to 12–79 | 1–80 to 8–80 | 9–80 to 6–81 |
|---|---|---|---|
| David Berger | $250.00 | $250.00 | $260.00 |
| Harold Berger | 175.00 | 175.00 | 185.00 |
| Herbert Fogel | 250.00 | ------- | ------- |
| H. Laddie Montague, Jr. | ------- | 150.00 | 175.00 |
| Merrill Davidoff | 100.00 | 100.00 | 125.00 |
| Daniel Berger | ------- | 90.00 | 100.00 |
| Richard M. Abrams | 75.00 | 75.00 | ------- |
| Allan Kanner | ------- | ------- | 75.00 |
| Roger Bernstein | 65.00 | 70.00 | 80.00 |
| Richard Eppinger | 55.00 | 60.00 | 75.00 |
| Law Clerks | 35.00 | 35.00 | ------- |
| Paralegals | 25.00 | 30.00 | 30.00 |

The time approved for payment was expended in the following manner:

| Attorney | 4–79 to 12–79 | 1–80 to 8–80 | 9–80 to 6–81 |
|---|---|---|---|
| **David Berger** | | | |
| Class Action Proceedings | 28.25 | 76.25 | ------ |
| Investigation & Research | 15.50 | 21.50 | 102.55 |
| Notice & Claim Forms | 25.75 | 13.00 | 84.75 |
| Case Planning | 92.75 | 18.00 | 27.50 |
| Pleadings | 66.75 | ------ | ------ |
| Jurisdiction | 2.0 | ------ | ------ |
| Court Appearances | 43.50 | 1.25 | 18.00 |
| NRC Activities | 4.50 | 1.50 | ------ |
| Travel | ------ | ------ | 26.00 |
| Settlement | 12.00 | 6.75 | 121.95 |
| Settlement Administration | ------ | ------ | 36.75 |
| Other Activities | ------ | 1.25 | ------ |
| | 291.00 | 139.50 | 417.50 |
| | | | |
| **Harold Berger** | | | |
| Pleadings | 48.50 | ------ | ------ |
| Case Planning | 71.00 | 29.50 | 33.00 |
| Jurisdiction | 6.25 | ------ | ------ |
| Investigation & Research | 32.25 | 54.50 | 96.95 |
| Notice & Claim Forms | 19.00 | 23.50 | 83.75 |
| Court Appearances | 31.25 | .75 | 16.25 |
| Travel | ------ | ------ | 26.00 |
| Class Action Proceedings | 42.50 | 63.50 | 5.00 |
| NRC Activities | 4.75 | 3.25 | ------ |
| Settlement | 11.00 | 5.00 | 107.25 |
| Settlement Administration | ------ | ------ | 55.75 |
| | 266.50 | 180.00 | 423.95 |
| | | | |
| **Herbert Fogel** | | | |
| Pleadings | 4.50 | ------ | ------ |
| Case Planning | 15.75 | ------ | ------ |
| Class Action Proceedings | 6.25 | ------ | ------ |
| Investigation & Research | 2.50 | ------ | ------ |
| Notice & Claim Forms | 3.00 | ------ | ------ |
| Court Appearances | 25.00 | ------ | ------ |
| Settlement | 4.00 | ------ | ------ |
| | 61.00 | | |
| | | | |
| **H. Laddie Montague, Jr.** | | | |
| Class Action Proceedings | ------ | .50 | ------ |
| Case Planning | ------ | ------ | 1.50 |
| Investigation & Research | ------ | ------ | 13.00 |
| Notice & Claim Forms | ------ | ------ | 2.50 |
| Settlement Administration | ------ | ------ | ------ |
| Settlement | ------ | ------ | 24.75 |
| | | .50 | 36.00 |

| Attorney | 4–79 to 12–79 | 1–80 to 8–80 | 9–80 to 6–81 |
|---|---|---|---|
| **Merrill Davidoff** | | | |
| Pleadings | 4.50 | ------ | ------ |
| Class Action Proceedings | 5.50 | 5.50 | ------ |
| Investigation & Research | 14.50 | ------ | 3.00 |
| Notice & Claim Forms | 1.25 | ------ | 1.00 |
| Case Planning | .75 | ------ | ------ |
| Settlement | ------ | ------ | 6.50 |
| Settlement Administration | ------ | ------ | .25 |
| | 26.50 | 5.50 | 10.75 |
| | | | |
| **Daniel Berger** | | | |
| Class Action Proceedings | ------ | 98.75 | 4.50 |
| Investigation & Research | ------ | 50.75 | 133.20 |
| Notice & Claim Forms | ------ | .25 | 85.50 |
| Court Appearances | ------ | ------ | 11.50 |
| Case Planning | ------ | 14.00 | 23.00 |
| Travel | ------ | ------ | 21.50 |
| Settlement | ------ | ------ | 237.00 |
| Settlement Administration | ------ | ------ | 138.75 |
| | | 163.75 | 654.95 |
| | | | |
| **Richard M. Abrams** | | | |
| Pleadings | 164.75 | ------ | ------ |
| Case Planning | 56.75 | ------ | ------ |
| Jurisdiction | 13.25 | ------ | ------ |
| Investigation & Research | 146.00 | ------ | ------ |
| Notice & Claim Forms | 30.50 | ------ | ------ |
| Court Appearances | 10.50 | ------ | ------ |
| Class Action Proceedings | 66.75 | 1.00 | ------ |
| NRC Activities | 3.00 | ------ | ------ |
| | 491.50 | 1.00 | |
| | | | |
| **Allan Kanner** | | | |
| Case Planning | ------ | ------ | 89.25 |
| Class Action Proceedings | ------ | ------ | 27.75 |
| Investigation & Research | ------ | ------ | 670.40 |
| Notice & Claim Forms | ------ | ------ | 221.50 |
| Court Appearances | ------ | ------ | 15.00 |
| Travel | ------ | ------ | 30.00 |
| Settlement | ------ | ------ | 280.25 |
| Settlement Administration | ------ | ------ | 117.50 |
| | | | 1511.65 |
| **Roger Bernstein** | | | |
| Pleadings | 28.75 | ------ | ------ |
| Class Action Proceedings | 69.75 | 94.75 | 1.00 |
| Case Planning | 6.75 | 19.25 | 1.75 |
| Investigation & Research | 10.75 | 36.25 | 4.00 |
| Notice & Claim Forms | 14.50 | 15.50 | 17.75 |
| Jurisdiction | 11.50 | ------ | ------ |
| Court Appearances | 6.5 | ------ | ------ |
| NRC Activities | ------ | 5.00 | ------ |
| Settlement | 1.50 | 2.50 | ------ |
| Other | ------ | 1.50 | ------ |
| | 150.00 | 174.75 | 24.50 |

| Attorney | 4–79 to 12–79 | 1–80 to 8–80 | 9–80 to 6–81 |
|---|---|---|---|
| **Richard Eppinger** | | | |
| Class Action Proceedings | 27.00 | 34.00 | ------ |
| Investigation & Research | 14.75 | 30.50 | ------ |
| Notice & Claim Forms | 8.75 | 6.00 | 4.00 |
| Case Planning | 15.00 | 94.00 | 2.00 |
| NRC Activities | ------ | 18.75 | ------ |
| Settlement Administration | ------ | ------ | ------ |
| Other | ------ | 1.50 | ------ |
| | 65.50 | 184.75 | 6.00 |
| | | | |
| **Law Clerks** | | | |
| Class Action Proceedings | ------ | 1.00 | ------ |
| Investigation & Research | ------ | 103.50 | ------ |
| | | 104.50 | |
| | | | |
| **Paralegals** | | | |
| Case Planning | ------ | 37.50 | 217.75 |
| Investigation & Research | 174.50 | 73.75 | 163.75 |
| Notice & Claim Forms | ------ | ------ | 11.25 |
| Class Action Proceedings | ------ | 6.75 | ------ |
| NRC Activities | 11.00 | ------ | ------ |
| Settlement Administration | ------ | ------ | 76.50 |
| | 185.50 | 118.00 | 469.25 |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| David Berger | 430.50 | x | $250.00 | = | $107,625.00 |
| David Berger | 417.50 | x | 260.00 | = | 108,550.00 |
| Harold Berger | 446.50 | x | 175.00 | = | 78,137.50 |
| Harold Berger | 423.95 | x | 185.00 | = | 78,430.75 |
| Herbert Fogel | 61.00 | x | 250.00 | = | 15,250.00 |
| H. Laddie Montague, Jr. | .50 | x | 150.00 | = | 75.00 |
| H. Laddie Montague, Jr. | 36.00 | x | 175.00 | = | 6,300.00 |
| Merrill Davidoff | 26.50 | x | 100.00 | = | 2,650.00 |
| Merrill Davidoff | 5.50 | x | 110.00 | = | 605.00 |
| Merrill Davidoff | 10.75 | x | 125.00 | = | 1,343.75 |
| Daniel Berger | 163.75 | x | 90.00 | = | 14,737.50 |
| Daniel Berger | 654.95 | x | 100.00 | = | 65,495.00 |
| Richard M. Abrams | 492.50 | x | 75.00 | = | 36,937.50 |
| Allan Kanner | 1511.65 | x | 75.00 | = | 113,373.75 |
| Roger Bernstein | 150.00 | x | 65.00 | = | 9,750.00 |
| Roger Bernstein | 174.75 | x | 70.00 | = | 12,232.50 |
| Roger Bernstein | 24.50 | x | 80.00 | = | 1,960.00 |
| Richard Eppinger | 65.50 | x | 55.00 | = | 3,602.50 |
| Richard Eppinger | 184.75 | x | 60.00 | = | 11,085.00 |
| Richard Eppinger | 6.00 | x | 75.00 | = | 450.00 |
| Law Clerks | 104.50 | x | 35.00 | = | 3,657.50 |
| Paralegals | 185.50 | x | 25.00 | = | 4,637.50 |
| Paralegals | 587.25 | x | 30.00 | = | 17,617.50 |
| | | | | | $694,503.25 |

The court's order of October 17, 1979 appointing the plaintiffs' executive committee also required the executive committee to keep monthly time reports. Liaison counsel was directed to file a consolidated monthly report with the court. The following hours and rate will be approved for that work and will not be included in the multiplier factor.

402.25 hours @ $50.00 per hour = $20,112.50

*Jameson and Milspaw*

Immediately after the accident the firm began interviewing clients about the types of damage they had sustained. These investigations translated into the filing of a complaint. After the formation of plaintiffs' executive committee of lawyers to prosecute the lawsuit, this firm was given the task of reviewing and commenting upon the defendants' proposed stipulation of facts. There were 188 facts in all dealing with the technicalities of the radiation dispersals during the incident, the water samplings for iodine-131, testing done for radiation and chemicals and the assessments of the future health effects of the releases from the reactor on the population. The graphs, charts, and tables submitted with these facts were quite detailed. Jameson and Milspaw worked on the factual investigation subcommittee gathering data for proof at trial as to the cause of the accident and facts to establish the damages claimed by the plaintiffs. The firm's work on the damage question led to the drafting of a legal memorandum for the plaintiffs' executive committee on the issue of recovery of punitive damages. Attorney Jameson presented one of his clients as a witness at the hearing on certification of a personal injury class.

The majority of the time which the firm has attributed to this litigation has been approved. The court believes that there was excessive time spent by the law clerk on a memorandum prepared on the issue of punitive damages. Payment for 43.5 hours related to the memorandum was requested. Two-thirds of that amount, 29 hours, will be approved. A few of the expenses have been cut. Some copying charges which were post-settlement will not be allowed, nor will a claim for meal expenses filed by attorney Milspaw be allowed.

The hourly rates requested by Jameson and Milspaw were:

| | |
|---|---|
| Richard Jameson | $90.00 |
| Luther E. Milspaw, Jr. | 90.00 |
| John F. Lyons | 65.00 |
| Law Clerks | 20.00 |

The court finds the rates for Jameson and Milspaw to be reasonable, in light of the attorneys' experience, for the periods involved in this litigation. However, the rate for John Lyons will be reduced to $55.00 per hour. That was the rate stated as his hourly rate, in correspondence with Magistrate Havas, during the early phase of the case. The rate charged for law clerk time will be approved.

Reimbursement for expenses will be granted in the amount of $4,957.68.

The time approved as reasonable for each compensable endeavor on which the firm worked is as follows:

| Attorney | Hours |
|---|---|
| **Richard Jameson** | |
| Class Action Proceedings | 31.4 |
| Investigation & Research | 118.5 |
| Notice & Claim Forms | 24.5 |
| Case Planning | 85.6 |
| Settlement Administration | 32.9 |
| Pleadings | 35.9 |
| Jurisdiction | 1.6 |
| Document Review | 10.5 |
| NRC Activities | 6.5 |
| Travel | 48.0 |
| Other Activities | 63.7 |
| Settlement | 13.8 |
| | 472.9 |
| | |
| **Luther Milspaw, Jr.** | |
| Class Action Proceedings | .5 |
| Case Planning | 71.9 |
| Settlement Administration | 1.0 |
| Investigation & Research | 124.7 |
| Notice & Claim Forms | 16.5 |
| Document Review | 12.9 |
| Pleadings | 13.8 |
| NRC Activities | 22.7 |
| Other Activities | 22.5 |
| | 286.5 |

| Attorney | Hours | Attorney | Hours |
|----------|-------|----------|-------|
| John Lyons | | | |
| Investigation & Research | 30.6 | Notice & Claim Forms | 25.50 |
| | | Case Planning | 99.10 |
| | | NRC Activities | 6.2 |
| Law Clerks | | Travel | 54.80 |
| Pleadings | 44.7 | Settlement Administration | 29.60 |
| Jurisdiction | 1.6 | | 278.70 |
| Settlement | 17.20 | | |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|----------|-------|---|-------------|---|--------|
| Richard Jameson | 472.9 | x | $ 90.00 | = | $42,561.00 |
| Luther Milspaw, Jr. | 286.5 | x | 90.00 | = | 25,785.00 |
| John Lyons | 30.6 | x | 55.00 | = | 1,683.00 |
| Law Clerks | 278.70 | x | 20.00 | = | 5,574.00 |
| | | | | | $75,603.00 |

*Stock and Leader*

In the firm of Stock and Leader, Raymond Hovis did the bulk of the work which contributed to the creation of the settlement fund. He spent many hours investigating the accident at Reactor Number 2. His studies culminated in comments filed with the Nuclear Regulatory Commission (NRC). The comments addressed an NRC panel report to the Secretary of the NRC and attempted to persuade the NRC to declare the TMI incident an "extraordinary nuclear occurrence." Under the Price-Anderson Act,[3] such a declaration would have automatically eliminated certain legal defenses which could have been raised. Though plaintiffs were unable to persuade the Nuclear Regulatory Commission that the events at TMI constituted an "extraor-dinary nuclear occurrence," the research devoted to this question was useful to develop a background for a possible punitive damage claim and to enlarge the plaintiffs' understanding of the radiation dosage that the population surrounding the reactor may have experienced. The court has reviewed Mr. Hovis' work and finds it to be of high quality. The hours expended by the members of the firm in furthering the class action were reasonable. Only a few of the listed hours were eliminated. The eliminated hours appeared to involve client contact to discuss the settlement or to answer inquiries after the case was well under way.

The hourly rates requested by the Stock and Leader firm and approved as reasonable are:[4]

| Attorney | Prior to 11–1–79 | 11–1–79–11–1–80 | 11–2–80 & thereafter |
|----------|------------------|-----------------|----------------------|
| Henry B. Leader | $ 90.00 | $ 92.00 | $------- |
| Raymond L. Hovis | 80.00 | 85.00 | 90.00 |
| William H. Neff, Jr. | 80.00 | -------- | ------- |
| William C. Gierasch, Jr. | 55.00 | 62.00 | 68.00 |
| Law Clerks | 15.00 | 20.00 | ------- |

The expense reimbursement sought was $8,743.16. The figure has been carefully reviewed, found reasonable, and will be granted.

---

**3.** Act of Sept. 2, 1957, Pub.L. 85–256, 71 Stat. 576 (codified at 42 U.S.C. § 2210) as amended.

**4.** No hourly rate was supplied for Allen Rose although 14 hours attributable to his work appear in the monthly time reports. This time will remain uncompensated since the information needed to calculate the lodestar was not supplied.

The time approved as reasonable for each compensable endeavor on which the firm worked is as follows:

| Attorney | Prior to 11–1–79 | 11–1–79–11–1–80 | 11–2–80 & thereafter |
|---|---|---|---|
| Raymond L. Hovis | | | |
| Class Action Proceedings | 3.6 | 19.8 | .2 |
| Investigation & Research | 44.5 | 156.3 | 86.7 |
| Notice & Claim Forms | 4.9 | 11.10 | .2 |
| Case Planning | 53.6 | 46.65 | 20.9 |
| Pleadings | 16.8 | ------- | ------- |
| Jurisdiction | 13.6 | 1.3 | ------- |
| Court Appearances | 6.0 | ------- | ------- |
| Document Review | 24.8 | .4 | .5 |
| NRC Activities | 38.2 | 65.7 | ------- |
| Travel | 15.7 | 14.0 | 20.0 |
| Settlement | ------- | .1 | 7.6 |
| Settlement Administration | ------- | ------- | 8.5 |
| | 221.70 | 315.35 | 144.60 |
| | | | |
| William C. Gierasch, Jr. | | | |
| Case Planning | 7.6 | 4.6 | .2 |
| Jurisdiction | 25.6 | ------- | ------- |
| Investigation & Research | 3.2 | .2 | 2.4 |
| Notice & Claim Forms | 2.1 | 10.2 | ------- |
| Court Appearances | 3.0 | ------- | ------- |
| Travel | 5.9 | 4.0 | ------- |
| Class Action Proceedings | ------- | 1.3 | ------- |
| NRC Activities | ------- | .2 | ------- |
| Settlement | ------- | ------- | .1 |
| | 47.40 | 20.50 | 2.7 |
| | | | |
| Henry B. Leader | | | |
| Case Planning | 1.0 | .4 | ------- |
| | | | |
| William H. Neff, Jr. | | | |
| Case Planning | 1.0 | ------- | ------- |
| | | | |
| Law Clerks | | | |
| Investigation & Research | 9.6 | ------- | ------- |

---

The lodestar which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Raymond L. Hovis | 144.60 | x | $90.00 | = | $13,014.00 |
| Raymond L. Hovis | 315.35 | x | 85.00 | = | 26,804.75 |
| Raymond L. Hovis | 221.70 | x | 80.00 | = | 17,736.00 |
| Henry B. Leader | .4 | x | 92.00 | = | 36.80 |
| Henry B. Leader | 1.0 | x | 90.00 | = | 90.00 |
| William H. Neff, Jr. | 1.0 | x | 80.00 | = | 80.00 |
| William C. Gierasch, Jr. | 2.7 | x | 68.00 | = | 183.60 |
| William C. Gierasch, Jr. | 20.50 | x | 62.00 | = | 1,271.00 |

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| William C. Gierasch, Jr. | 47.40 | x | 55.00 | = | 2,607.00 |
| Law Clerks | 1.0 | x | 20.00 | = | 20.00 |
| Law Clerks | 9.6 | x | 15.00 | = | 144.00 |
| | | | | | $61,987.15 |

### Barrack, Rodos and McMahon

Barrack, Rodos, and McMahon's specific task as a member of the plaintiffs' executive committee was to review proceedings in the Nuclear Regulatory Commission to determine what information gleaned there could aid plaintiffs in the prosecution of the class action. In addition, members of the firm served on committees formed to develop factual data and to analyze defendants' 188 proposed stipulations of fact which were originally intended as a substitute for adversary proof at trial.

The hourly compensation requested by Barrack, Rodos and McMahon for its attorneys involved in this litigation is as follows:

| Attorney | 4–1–79–12–31–79 | 1–1–80–12–31–80 | 1–1–80 & thereafter |
|---|---|---|---|
| Leonard Barrack | $125.00 | $135.00 | $145.00 |
| Gerald J. Rodos | 85.00 | 110.00 | 115.00 |
| Paul J. McMahon | 80.00 | 100.00 | 105.00 |
| Daniel E. Bacine | 75.00 | 90.00 | 100.00 |
| Herbert B. Newberg | 135.00 | 135.00 | ------- |
| Donald E. Keener | ------- | 75.00 | ------- |

These rates are reasonable hourly charges for attorneys with comparable experience in the Philadelphia area. The firm spent $7,042.23 in the prosecution of this case. An itemization of these expenses appears in the petition. Included in this itemization was $20.00 in admission fees which will not be approved. The remainder of the out-of-pocket costs of $7,022.23 were necessary to the conduct of the action and will be reimbursed.

The time approved as reasonable for each compensable endeavor on which the firm worked is:

| Attorney | 4–1–79–12–31–79 | 1–1–80–12–31–80 | 1–1–81 & thereafter |
|---|---|---|---|
| **Leonard Barrack** | | | |
| Class Action Proceedings | 26.25 | 7.70 | ------- |
| Investigation & Research | 15.50 | 2.25 | ------- |
| Notice & Claim Forms | 6.75 | ------- | ------- |
| Case Planning | 41.0 | .25 | ------- |
| Pleadings | 14.75 | ------- | ------- |
| Jurisdiction | 3.0 | ------- | ------- |
| NRC Activities | .25 | ------- | ------- |
| Travel | 7.0 | ------- | ------- |
| Settlement | ------- | ------- | 3.0 |
| | 114.50 | 10.20 | 3.0 |
| | | | |
| **Gerald J. Rodos** | | | |
| Jurisdiction | ------- | 3.25 | ------- |
| Investigation & Research | 19.25 | 23.25 | 1.5 |
| Notice & Claim Forms | .75 | ------- | ------- |
| Class Action Proceedings | 1.5 | 1.5 | ------- |
| Pleadings | 2.75 | ------- | ------- |
| | 24.25 | 28.00 | 1.5 |

| Attorney | 4–1–79–12–31–79 | 1–1–80–12–31–80 | 1–1–81 & thereafter |
|---|---|---|---|
| **Paul J. McMahon** | | | |
| Class Action Proceedings | 12.0 | ------- | ------- |
| Jurisdiction | ------- | 4.25 | ------- |
| Investigation & Research | 45.75 | 119.75 | 2.75 |
| Settlement | ------- | ------- | 9.25 |
| Notice & Claim Forms | ------- | 3.50 | ------- |
| Case Planning | ------- | 20.75 | 7.0 |
| | 57.75 | 148.25 | 19.0 |
| | | | |
| **Daniel E. Bacine** | | | |
| Pleadings | 4.2 | ------- | ------- |
| Class Action Proceedings | 34.0 | .90 | ------- |
| Jurisdiction | ------- | .50 | ------- |
| Investigation & Research | 12.5 | ------- | ------- |
| Notice & Claim Forms | .30 | ------- | ------- |
| Case Planning | 22.0 | 5.0 | ------- |
| NRC Activities | 1.50 | ------- | ------- |
| | 74.5 | 6.40 | |
| | | | |
| **Herbert E. Newberg** | | | |
| Class Action Proceedings | 6.0 | ------- | ------- |
| Investigation & Research | 2.0 | ------- | ------- |
| | 8.0 | | |
| | | | |
| **Donald E. Keener** | | | |
| Investigation & Research | ------- | 30.20 | ------- |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Leonard Barrack | 3.0 | x | $145.00 | = | $ 435.00 |
| Leonard Barrack | 10.20 | x | 135.00 | = | 1,377.00 |
| Leonard Barrack | 114.50 | x | 125.00 | = | 14,312.50 |
| Gerald J. Rodos | 1.5 | x | 115.00 | = | 172.50 |
| Gerald J. Rodos | 28.0 | x | 110.00 | = | 3,080.00 |
| Gerald J. Rodos | 24.25 | x | 85.00 | = | 2,061.25 |
| Paul J. McMahon | 19.0 | x | 105.00 | = | 1,995.00 |
| Paul J. McMahon | 148.25 | x | 100.00 | = | 14,825.00 |
| Paul J. McMahon | 57.75 | x | 80.00 | = | 4,620.00 |
| Daniel E. Bacine | 6.40 | x | 90.00 | = | 576.00 |
| Daniel E. Bacine | 74.50 | x | 75.00 | = | 5,587.50 |
| Herbert B. Newberg | 8.0 | x | 135.00 | = | 1,080.00 |
| Donald E. Keener | 30.20 | x | 75.00 | = | 2,265.00 |
| | | | | | $52,386.75 |

*Barry A. Roth*

Barry A. Roth, a sole practitioner in Harrisburg, was assigned to several of plaintiffs' committees. Among these was the committee on claim forms. The parties and the court recognized early in the action that notices about the class action would eventually have to be sent to class members and that comprehensive, but understandable claim forms would have to be developed. To further these project(s), Roth and other attorneys collected master lists of names

and addresses of businesses and residents in the area, reviewed claim forms used in other lawsuits and began designing forms for claims resulting from the TMI incident. Roth also served on committees to investigate and develop factual data for use at trial.

Barry Roth has calculated his fees based on the following hourly rates for which he seeks approval:

| 4-1-79-11-30-79 | 12-1-79-11-30-80 | 12-1-80 & thereafter |
|---|---|---|
| $50.00 | $70.00 | $80.00 |

A slight adjustment has been made in the reimbursement sought for expenses. Itemized travel expenses, which the court requested as a supplement to the fee petition, proved not to be as high as those requested in the petition. A payment of $3601.79 for costs advanced to foster the litigation will be authorized.

The time approved as reasonable for each compensable endeavor on which Mr. Roth worked is as follows:

| | 4-1-79-11-30-79 | 12-1-79-11-30-80 | 12-1-80 & thereafter |
|---|---|---|---|
| Class Action Proceedings | 31.20 | 1.40 | ------- |
| Investigation & Research | 54.10 | 70.40 | 26.90 |
| Notice & Claim Forms | 53.90 | 36.50 | 6.70 |
| Case Planning | 87.80 | 48.40 | 8.70 |
| Jurisdiction | 6.0 | ------- | ------- |
| NRC Activities | 1.80 | 1.50 | ------- |
| Travel | 5.0 | 15.0 | 15.0 |
| Court Appearances | 2.0 | ------- | ------- |
| Document Review | 19.5 | 16.30 | ------- |
| Settlement | ------- | ------- | 4.40 |
| | 261.3 | 189.5 | 61.70 |

The lodestar fee which the court authorizes is determined as follows:

| Hours | | Hourly rate | | Amount |
|---|---|---|---|---|
| 61.7 | x | $ 80.00 | = | $ 4,936.00 |
| 189.5 | x | 70.00 | = | 13,265.00 |
| 261.3 | x | 50.00 | = | 13,065.00 |
| | | | | $31,266.00 |

*Cohen, Shapiro, Polisher, Shiekman & Cohen*

The motion for award of counsel fees filed by Cohen, Shapiro, Polisher, Shiekman and Cohen (Cohen) presents the court with a dilemma. A lengthy quote from another federal district court in Pennsylvania says it all:

In calculating the first part of the "lodestar", the Third Circuit has made it clear that the district court is required to determine "not only the number of hours actually devoted to the successful claims, but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought." *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir.1978). The petitioners bear the burden of showing that the number of hours attributable to the pursuit of the successful claim was "reasonably necessary." *Id.*

The petitioners have submitted to us records demonstrating the number of hours actually spent by the Dilworth firm and the Cohen firm in pursuit of this claim. These figures were maintained contemporaneously, and there is no reason to doubt their accuracy. However, it is much more difficult for us to determine whether or not petitioners have met their burden of demonstrating that these hours were reasonably necessary in the pursuit of this claim. In view of the submissions made by the petitioners, it is abundantly clear that the standards set out in *Lindy I, Lindy II,* and cases following are more easily stated than applied.

For example, in the case at hand, petitioners submitted an Affidavit in Support of Application for Allowance of Attor-

ney's Fees and Costs. This affidavit contained a breakdown of the number of hours billed by attorneys, law clerks, and paralegals at the Cohen firm, and the billing rates for each. In addition, attached to the affidavit were computer printouts which contained billing information for each lawyer, law clerk, and paralegal. These computer printouts provided us with a notation of the date that each party worked on the *Burroughs* case, the number of hours spent on the case on that date, and a brief description of the nature of the activity engaged in (e.g., "Discovery, Correspondence", Discovery: Telephone", "Trial"). *These printouts do not provide any detailed information concerning the exact nature of the project worked on;* however, by coordinating the dates on the printouts with the dates on which documents were filed, etc., it is sometimes, but not always, possible to estimate how many hours were spent on different matters.

Subsequent to the Third Circuit's decisions in *Hughes v. Repko, supra; Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir.1978); and *Prandini v. National Tea Company,* 585 F.2d 47 (3d Cir.1978) *(Prandini II),* and in an attempt to comply with the mandates of those cases, we ordered the parties to provide us with additional information. By Order dated August 31, 1978, we requested:

In anticipation of the hearing and in consideration of the court's duty to closely scrutinize plaintiff counsel's petition to determine the nature of the activities of counsel in a meaningful manner, *see Baughman,* plaintiff's counsel shall submit:

a. A supplemental affidavit providing specific detailed evidence of the precise services rendered by counsel for plaintiff and reasonably necessary hours expended particularly with respect to each identifiable event or activity in the case, e.g., each document filed, each deposition involving participation by counsel for plaintiff, each conference attended, each court hearing, in order to provide sufficient and adequate information for the court to evaluate claimed hours and the nature of the services performed. . . .

In response to this Order, counsel for plaintiff submitted to us a Supplementary Affidavit, filed September 21, 1978. This affidavit stated that, due to the method used by the Cohen firm to keep its time sheets, the information the Court requested was, for the most part, not available. Only the general nature of the activities were recorded on the time sheets, and this information could be obtained from the computer printout. The affidavit further stated "Your affiant does represent to this Court that neither he nor anyone else in the Cohen Firm, to the best of his knowledge and belief, ever expended or recorded time for this case unless he or she in the exercise of their professional judgment believed it to be reasonably necessary and proper in order properly to represent the client and carry out counsel's obligation to the Court and to the client under applicable statutes, cases, rules of court and the Code of Professional Responsibility."

In light of the general nature of the petitioner's response, we are placed in a quandary. It is true that, by laboriously comparing the docket entries with the computer printouts, we may be able to reach rough estimates of the amount of time devoted to different, specific activities. However, these estimates are only approximate and may not in all instances furnish us with the information needed to make a determination of "reasonableness." Furthermore, this "piecing together" is a very time-consuming task. Requiring the court to perform this task seems to contravene the statement "It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief." 540 F.2d at 116.

On the other hand, by accepting wholesale petitioners' representations that the hours expended were "reasonably necessary" we would be abdicating our judicial function.

(Emphasis supplied.) *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012, 1015–6 (E.D.Pa. 1979), *modified* 619 F.2d 276 (3d Cir.1980) (Footnote omitted).

Despite the fact that Judge Huyett filed the *Wehr* opinion on August 31, 1979, just a few months after the Cohen firm became involved in the TMI litigation, the time records kept in this litigation are no more illuminating than those presented to Judge Huyett. The court is faced with a similar cursory computer printout. Entries such as "review documents," "conference staff," "telephone," and "3rd party dispute research investigation" are of no assistance to the court. The fact that this case was not litigated and the fact that the firm's contributions to the case came under the direction of plaintiffs' liaison counsel makes the court's evaluation even more difficult. Additionally, in perusing the printout the court noted entries which on their face do not appear to be related to this litigation. Examples include entries for counseling on October 22, 1979, for collection and bankruptcy in May of 1980, for domestic relations in October of 1980, four entries in late October and early November of 1979 totaling 15.7 hours for the preparation of pleadings (four months after the consolidated class action complaint was filed in the TMI litigation). This is by no means a comprehensive list of the questionable entries. Furthermore, over two hundred hours billed at one hundred dollars an hour, are listed as "client 3rd party dispute."

On September 22, 1982, in response to this court's inquiry, supplemental affidavits were filed by the Cohen firm in an attempt to clarify these questionable entries. The firm describes the entry "client-3d Party Dispute" as work done on class action issues. Other entries are explained as being incorrectly coded, or entries relating to other cases or errors in transferring code numbers from time sheets to the computer.

The firm has also included among its attorney hours a charge for LEXIS time in excess of two thousand dollars. The Court of Appeals for the Third Circuit held in *Wehr v. Burroughs Corp.,* 619 F.2d 276, 285 (3d Cir.1980), that LEXIS charges are a reimbursable *expense.* They are not attorneys' hours.

The court has three choices in deciding the amount of fees to award to this firm. No fees can be awarded on the basis that the firm has failed to comply with the previous warnings of the *Wehr* case and this court.[5] The court concludes that this is too harsh. The exact fees requested could be awarded based on the affidavits of the respective attorneys. To accept wholesale the representations that the hours were "reasonably necessary" would be abdicating the court's function.

The third alternative is to make an educated guess, even though such guesswork will lack the exactitude required in this circuit. The court will opt for the third alternative since there is some evidence of record that the firm did some work on this case. The court will assume that some of the hours claimed for the TMI class action did contribute to the creation of the settlement fund and were reasonably necessary.

Expenses will be approved in the amount of $12,897.46. The only significant change made in those requested expenses was the elimination of charges for meals at which the case was discussed. The test for compensation under the equitable fund doctrine is whether the expense contributed to the creation or protection of the plaintiffs' recovery. The class plaintiffs' fund should not be reduced by the cost of the food that the attorneys consumed. Presumably the lawyers would have eaten whether or not the lawsuit existed. Their ingestion was of no particular benefit to the common fund.

The hourly compensation requested by the Cohen firm is as follows:

| Attorney | 1979 | 1980 | 1981 |
|---|---|---|---|
| Faye R. Cohen | $ 65.00 | $ ------ | $ ------ |
| Joseph M. Donley | 60.00 | 70.00 | ------ |
| Howard J. Kaufman | 100.00 | 100.00 | 110.00 |
| Patrick W. Kittredge | 125.00 | 135.00 | 150.00 |
| Alan M. Lerner | 100.00 | 100.00 | 110.00 |

5. In a letter of Magistrate Havas, dated February 13, 1980, notifying the executive committee of the necessity for detailed time reports. (Attached hereto as Appendix A.)

| Attorney | 1979 | 1980 | 1981 |
|---|---|---|---|
| Jeffrey I. Pasek | 70.00 | ------ | 90.00 |
| Mandell K. Shanken | 75.00 | ------ | ------ |
| Richard M. Squire | 100.00 | ------ | ------ |
| Bruce L. Thall | 75.00 | 75.00 | ------ |
| Steven M. Coren | 20.00 | 45.00 | 50.00 |
| Martha S. Swartz | 20.00 | ------ | ------ |
| Betty A. Metz | 30.00 | 30.00 | ------ |
| Deborah M. Peters | 30.00 | ------ | ------ |
| Rebecca G. Sturchio | 30.00 | ------ | ------ |
| Patricia A. Leonard | 30.00 | ------ | ------ |
| Cynthia S. Walsh | 30.00 | 30.00 | 35.00 |
| Barbara A. Toner | 30.00 | 32.50 | ------ |
| Edward R. Eidelman | 17.50 | ------ | ------ |
| Bruce Grohsgal | 20.00 | ------ | ------ |

These rates are reasonable hourly charges for attorneys with comparable experience in the Philadelphia area and they will be approved.

The time approved as reasonable for each compensable endeavor on which the firm worked is as follows:

| Attorney | 1979 | 1980 | 1981 |
|---|---|---|---|
| **Faye R. Cohen** | | | |
| Investigation & Research | 1.2 | ------ | ------ |
| Case Planning | .3 | ------ | ------ |
| | 1.5 | | |
| **Joseph M. Donley** | | | |
| Case Planning | 7.2 | ------ | ------ |
| Document Review | .5 | ------ | ------ |
| Investigation & Research | 1.7 | .4 | ------ |
| | 9.40 | .4 | |
| **Howard J. Kaufman** | | | |
| Investigation & Research | 3.9 | ------ | ------ |
| Case Planning | 48.45 | ------ | 11.7 |
| Document Review | 6.9 | ------ | 3.0 |
| Settlement Administration | ------ | ------ | 6.5 |
| | 59.25 | | 21.20 |
| **Patrick W. Kittredge** | | | |
| Case Planning | 44.25 | ------ | 1.05 |
| Document Review | 18.37 | ------ | 1.35 |
| Other | ------ | ------ | 6.0 |
| | 62.62 | | 8.40 |
| **Alan M. Lerner** | | | |
| Investigation & Research | 7.5 | ------ | ------ |
| Case Planning | 50.0 | ------ | ------ |
| Document Review | 7.6 | ------ | ------ |
| Travel | 10.0 | ------ | ------ |
| Other | 15.6 | ------ | ------ |
| Settlement Administration | ------ | ------ | 3.7 |
| | 90.70 | | 3.7 |
| **Jeffrey I. Pasek** | | | |
| Case Planning | .3 | ------ | ------ |
| **Mandell K. Shanken** | | | |
| Case Planning | 16.5 | ------ | ------ |

| Attorney | 1979 | 1980 | 1981 |
|---|---|---|---|
| **Richard M. Squire** | | | |
| Case Planning | .8 | ------ | ------ |
| **Bruce L. Thall** | | | |
| Investigation & Research | 72.45 | ------ | ------ |
| Case Planning | 28.8 | ------ | ------ |
| Travel | 5.0 | ------ | ------ |
| Other | 39.75 | ------ | ------ |
| | 146.0 | | |
| **Steven M. Coren** | | | |
| Investigation & Research | 3.4 | 61.95 | ------ |
| Document Review | ------ | 1.725 | .8 |
| Case Planning | 2.5 | 34.8 | 3.7 |
| | 5.9 | 98.475 | 4.50 |
| **Martha S. Swartz** | | | |
| Investigation & Research | 2.7 | ------ | ------ |
| **Betty A. Metz** | | | |
| Investigation & Research | 4.0 | ------ | ------ |
| **Deborah M. Peters** | | | |
| Investigation & Research | .5 | ------ | ------ |
| Case Planning | 5.6 | ------ | ------ |
| Document Review | .7 | ------ | ------ |
| | 6.80 | | |
| **Rebecca G. Sturchio** | | | |
| Case Planning | 4.05 | ------ | ------ |
| Investigation & Research | 17.9 | ------ | ------ |
| Document Review | 7.65 | ------ | ------ |
| Other | 2.475 | ------ | ------ |
| | 32.075 | | |
| **Patricia A. Leonard** | | | |
| Case Planning | 11.5 | ------ | ------ |
| Investigation & Research | 8.0 | ------ | ------ |
| Travel | 1.3 | ------ | ------ |
| Document Review | 9.6 | ------ | ------ |
| Other | 1.3 | ------ | ------ |
| | 31.70 | | |
| **Cynthia S. Walsh** | | | |
| Investigation & Research | 61.40 | ------ | ------ |
| Document Review | 1.3 | ------ | ------ |
| Case Planning | 10.35 | ------ | ------ |
| Other | 6.7 | ------ | ------ |
| | 79.75 | | |
| **Barbara A. Toner** | | | |
| Investigation & Research | 11.25 | ------ | ------ |
| Case Planning | 7.5 | 1.8 | ------ |
| Document Review | 38.0 | ------ | ------ |
| Other | 1.5 | 6.25 | ------ |
| | 58.25 | 8.05 | |
| **Edward R. Eidelman** | | | |
| Investigation & Research | 33.75 | ------ | ------ |
| Other | 4.0 | ------ | ------ |
| | 37.75 | | |
| **Bruce Grohsgal** | | | |
| Investigation & Research | 14.0 | ------ | ------ |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|----------|-------|---|-------------|---|--------|
| Faye R. Cohen | 1.5 | x | $ 65.00 | = | $ 97.50 |
| Joseph M. Donley | 9.40 | x | 60.00 | = | 564.00 |
| Joseph M. Donley | .4 | x | 70.00 | = | 28.00 |
| Howard J. Kaufman | 59.25 | x | 100.00 | = | 5,925.00 |
| Howard J. Kaufman | 21.20 | x | 110.00 | = | 2,332.00 |
| Patrick W. Kittredge | 62.62 | x | 125.00 | = | 7,827.50 |
| Patrick W. Kittredge | 8.40 | x | 150.00 | = | 1,260.00 |
| Alan M. Lerner | 90.70 | x | 100.00 | = | 9,070.00 |
| Alan M. Lerner | 3.70 | x | 110.00 | = | 407.00 |
| Jeffrey I. Pasek | .3 | x | 70.00 | = | 21.00 |
| Mandell K. Shanken | 16.5 | x | 75.00 | = | 1,237.50 |
| Richard M. Squire | .8 | x | 100.00 | = | 80.00 |
| Bruce L. Thall | 146.0 | x | 75.00 | = | 10,950.00 |
| Steven M. Coren | 5.9 | x | 20.00 | = | 118.00 |
| Steven M. Coren | 98.475 | x | 45.00 | = | 4,431.38 |
| Steven M. Coren | 4.50 | x | 50.00 | = | 225.00 |
| Martha S. Swartz | 2.7 | x | 20.00 | = | 54.00 |
| Betty A. Metz | 4.0 | x | 30.00 | = | 120.00 |
| Deborah M. Peters | 6.80 | x | 30.00 | = | 204.00 |
| Rebecca G. Sturchio | 32.075 | x | 30.00 | = | 962.25 |
| Patricia A. Leonard | 31.70 | x | 30.00 | = | 951.00 |
| Cynthia S. Walsh | 79.75 | x | 30.00 | = | 2,392.50 |
| Barbara A. Toner | 58.25 | x | 30.00 | = | 1,747.50 |
| Barbara A. Toner | 8.05 | x | 32.50 | = | 261.63 |
| Edward R. Eidelman | 37.75 | x | 17.50 | = | 660.63 |
| Bruce Grohsgal | 14.00 | x | 20.00 | = | 280.00 |
| | | | | | $52,207.39 |

*Adler, Barish, Levin and Creskoff*

This firm contributed in all major areas of the litigation. It was extensively involved in the personal injury aspect of the case, particularly in developing proof of a need for medical detection services. To further its knowledge in this area members of the firm studied reports from the Department of Environmental Protection of the University of Heidelberg in West Germany. Scientists there had undertaken a study of the long term effects of exposure to low level radiation. Members of the firm met with scientists from the university. The firm did extensive work on the brief in support of class certification. Arnold Levin was lead counsel at the hearing on certification of a personal injury class.

The expense request submitted by the Adler firm totaled $13,913.13. All charges related to the litigation were reasonable and will be approved, with the exception of a $54 claim for lunch. Actual reimbursement will be $13,859.13.

The hourly rates requested by the Adler firm as follows:

| Attorney | Prior to 1/1/81 | Subsequent to 1/1/81 |
|----------|-----------------|----------------------|
| Arnold Levin | $125.00 | $150.00 |
| Avram G. Adler | 200.00 | 225.00 |
| Stanley P. Kops | 100.00 | 125.00 |
| Michael D. Fishbein | 90.00 | 110.00 |
| Josephine B. Stamm | 75.00 | 90.00 |
| Arline J. Lotman | 60.00 | 75.00 |
| Barbara E. Sarkin | 75.00 | 90.00 |
| Claudia Tesoro | 75.00 | 90.00 |
| Paralegal | 25.00 | 35.00 |
| Nancy E. Tialkowski | ------ | 75.00 |

Unfortunately no biographical data has been supplied on Barbara E. Sarkin or Claudia Tesoro. The court is unable to determine if they are attorneys or student law clerks. Lacking this information the court is unable to establish a reasonable hourly rate for these individuals. The firm will be given until December 20, 1982 to file a biographical affidavit on Sarkin and Tesoro. Otherwise the hourly rates are reasonable for attorneys in the Philadelphia area with comparable experience.

The time approved as reasonable for each compensable endeavor on which the firm worked is as follows:

| Attorney | Hrs. @ $150. | Hrs. @ $125. |
|---|---|---|
| **Arnold Levin** | | |
| Pleadings | | 13.5 |
| Class Action Proceedings | .50 | 169.5 |
| Jurisdiction | | 9.0 |
| Investigation & Research | | 82.50 |
| Notice & Claim Forms | | 13.50 |
| Case Planning | 4.75 | 113.25 |
| Document Review | | 5.0 |
| NRC Activities | | 19.25 |
| Travel | | 17.75 |
| Settlement | 18.50 | 11.75 |
| Settlement Administration | 3.0 | |
| | 26.75 | 455.00 |

| Attorney | Hrs. @ $225. | Hrs. @ $200. |
|---|---|---|
| **Avram G. Adler** | | |
| Pleadings | 1.0 | 2.0 |
| Class Action Proceedings | | 48.0 |
| Jurisdiction | | 1.0 |
| Investigation & Research | 13.0 | 120.75 |
| Notice & Claim Forms | | 2.5 |
| Court Appearances | | 4.0 |
| Case Planning | 8.0 | 50.50 |
| Document Review | | 1.0 |
| Travel | | 28.0 |
| Settlement | 3.0 | 2.5 |
| | 25.0 | 260.25 |

| | Hours |
|---|---|
| **Stanley P. Kops** | |
| Class Action Proceedings | 9.0 |
| Investigation & Research | 24.25 |
| Court Appearances | 6.0 |
| Case Planning | 32.75 |
| Document Review | 6.75 |
| Travel | 4.0 |
| | 82.75 |

| | Hours |
|---|---|
| **Michael D. Fishbein** | |
| Pleadings | 11.0 |
| Class Action Proceedings | 7.75 |
| Investigation & Research | 1.75 |
| Case Planning | 10.0 |
| | 30.50 |

| Attorney | Hours |
|---|---|
| Josephine B. Stamm | |
| Pleadings | 3.5 |
| Class Action Proceedings | 175.25 |
| Investigation & Research | 5.0 |
| Notice & Claim Forms | 1.0 |
| Case Planning | 35.0 |
| Travel | 4.0 |
| | 223.75 |
| | |
| Arline J. Lotman | |
| Investigation & Research | 8.0 |
| NRC Activities | 1.0 |
| | 9.0 |
| | |
| Paralegal | |
| Investigation & Research | 8.0 |
| | 8.0 |
| | |
| Nancy E. Tialkowski | |
| Investigation & Research | 24.0 |
| Case Planning | 3.0 |
| | 27.0 |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Arnold Levin | 26.75 | x | $150.00 | = | $ 4,012.50 |
| Arnold Levin | 455.00 | x | 125.00 | = | 56,875.00 |
| Avram G. Adler | 25.0 | x | 225.00 | = | 5,625.00 |
| Avram G. Adler | 260.25 | x | 200.00 | = | 52,050.00 |
| Stanley P. Kops | 82.75 | x | 100.00 | = | 8,275.00 |
| Michael D. Fishbein | 30.50 | x | 90.00 | = | 2,745.00 |
| Josephine B. Stamm | 223.75 | x | 75.00 | = | 16,781.25 |
| Arline J. Lotman | 9.0 | x | 60.00 | = | 540.00 |
| Paralegal | 8.0 | x | 25.00 | = | 200.00 |
| Nancy E. Tialkowski | 27.0 | x | 75.00 | = | 2,025.00 |
| | | | | | $149,128.75 |

### Hepford, Swartz, Menaker and Wilt

The Harrisburg firm of Hepford, Swartz, Menaker and Wilt has been a participant in several class action lawsuits in the Middle District of Pennsylvania. The bulk of the hours of legal work contributed by the firm to the instant TMI class action are attributable to Lee C. Swartz, a partner in the firm, and Mary Pauline Finan.

Ms. Finan was a law student clerk at the outset of her employment with the firm. Her time was devoted to an analysis of the events at the reactor in order to develop a fact statement for plaintiffs' use at trial. Some areas explored were control room problems and technical deficiencies in the Babcock and Wilcox equipment in use at the reactor. To this end she reviewed documents such as the Rogovin Report, Kemeny hearing transcripts, the Report of the Governor's Commission on TMI and the Report of the House Select Committee on TMI. Some of the hours for her work for which the firm seeks reimbursement have not been permitted. These include typing since typing is a secretarial function in the general overhead category. The court has also excluded the hours Ms. Finan spent working on a compilation of information on the

personal injury claims of the firm's clients. This time was spent after the court had refused to certify a personal injury class. Thus such time is more properly charged to the cases of individual clients who are pursuing personal injury claims. A number of hours were claimed for Ms. Finan's attendance of symposium on nuclear energy at Dickinson School of Law. Ms. Finan was still a law student attending Dickinson at the time. The court considers such hours part of general education, whether the time is that of an attorney or a student law clerk. The court will not reimburse them as hours chargeable to this case, particularly in light of the fact that the Swartz firm is prosecuting a number of cases which have their genesis in the TMI incident.

The bulk of the hours for which Lee Swartz seeks reimbursement were spent in meetings, telephone calls, letter reviews and strategy conferences. A very small percentage was devoted to "hard time" such as legal research or document drafting. The amount of time spent in a general manner is excessive. The court will approve seventy-five percent of the time which it finds attributable to this class action. Hours have been disallowed which were spent on private clients in the post-complaint phase and were not related to the class action hearing.

The hourly rates for which the firm seeks court approval are as follows:

| Attorney | Prior to 1/1/81 | Subsequent to 1/1/81 |
| --- | --- | --- |
| Lee C. Swartz | $125.00 | $150.00 |
| Leroy S. Zimmerman | 100.00 | 125.00 |
| Bonnie D. Menaker | 85.00 | 95.00 |
| Walter W. Wilt | 85.00 | 95.00 |
| James G. Morgan | 85.00 | 95.00 |
| Charles E. Schmidt | 75.00 | 85.00 |
| Mary Pauline Finan (beginning 6/80) | 75.00 | 85.00 |
| Mary Pauline Finan (before 6/80) | 40.00 | -------- |
| Paralegals | 25.00 | 35.00 |

The hourly rate requested by Lee C. Swartz is too high for an attorney of his experience practicing in the Harrisburg area. He has requested the same rate as Arnold Levin, a Philadelphia attorney who has greater experience with the nuts and bolts of class action litigation. The court has the rates of numerous central Pennsylvania attorneys before it as a result of the large number of counsel who participated in the TMI lawsuit.[6] It finds that a reasonable hourly rate for an attorney of Lee Swartz's experience in this locale is $100.00

to $125.00 for the period prior to January 1, 1981 and $125.00 to $135.00 thereafter.[7] The forty dollar rate for law clerk time in the Harrisburg area (Mary Pauline Finan before 6/80) is unreasonable. It is five dollars more than the rate charged by the David Berger, P.A. firm in Philadelphia. The other law clerk rates sought by firms in the central Pennsylvania area have been fifteen and twenty dollars per hour. The court acknowledges that some firms have a reputation that might permit a charge higher than fifteen or twenty dollars, but be-

6. The court is aware that Judge Muir of this district approved the hourly rate at issue here in *Holmes v. Penn Security Bank and Trust Co.,* Civil Action No. 80–0747, fee petition opinion filed on March 11, 1982. However, Judge Muir did not have before him the volume of fee petitions filed in this litigation and the consequent ability to make a rate comparison be-

tween other local firms and between Harrisburg and Philadelphia firms.

7. The court knows that higher rates may be charged for trial time. It is not unusual for firms in the area to have a dual rate structure charging more for time spent in court where particular trial skills are put to use. The time being compensated here is out of court time.

lieves twenty-five dollars is the maximum reasonable law clerk rate for this area. The hourly rate for Ms. Finan immediately upon graduation from law school is also excessive. The court will approve a rate of fifty dollars for the period from June of 1980 to December 31, 1980 and sixty dollars thereafter.

No biographical information has been provided for Charles E. Schmidt. Because the word "esquire" follows his name the court assumes he is an attorney. The firm will be given until December 20, 1982 to file a biographical affidavit for Schmidt.

The following hourly rates are approved as reasonable for attorneys in the Harrisburg vicinity with the experience of those in the Hepford, Swartz, Menaker and Wilt firm:

| Attorney | Prior to 1/1/81 | Subsequent to 1/1/81 |
|---|---|---|
| Lee C. Swartz | $125.00 | $135.00 |
| Leroy S. Zimmerman | 100.00 | 125.00 |
| James G. Morgan | 85.00 | 95.00 |
| Charles E. Schmidt | 50.00 | 50.00 |
| Mary Pauline Finan (beginning 6/80) | 50.00 | 60.00 |
| Mary Pauline Finan (before 6/80) | 25.00 | -------- |
| Paralegals | 25.00 | 25.00 |

The request for reimbursement of costs in the amount of $6,215.64 is reasonable and will be approved.

The time approved as reasonable for each compensable endeavor on which the firm worked is as follows:

| Attorney | Prior to 1/1/81 | Subsequent to 1/1/81 |
|---|---|---|
| Lee C. Swartz | | |
| Investigation & Research | 48.10 | 3.0 |
| Class Action Proceedings | 12.60 | ------- |
| Settlement | .4 | 7.8 |
| Notice & Claim Forms | 4.0 | .4 |
| Case Planning | 102.30 | 3.70 |
| Document Review | 3.9 | ------- |
| NRC Activities | 1.10 | ------- |
| Travel | 23.50 | 8.0 |
| Settlement Administration | ------- | 5.50 |
| | 195.90 | 28.40 |
| Adjusted (Per p. 29) | 146.93 | 21.30 |
| | | |
| Leroy S. Zimmerman | | |
| Investigation & Research | 1.0 | ------- |
| Court Appearances | 2.5 | ------- |
| Case Planning | .6 | ------- |
| | 4.10 | |
| | | |
| James G. Morgan | | |
| Case Planning | .6 | ------- |
| | | |
| Charles E. Schmidt | | |
| Case Planning | 1.2 | ------- |
| | | |
| Mary Pauline Finan (beginning 6/80) | | |
| Investigation & Research | 109.40 | 14.0 |
| Case Planning | 2.3 | 1.5 |
| Document Review | 3.8 | 5.0 |

| Attorney | Prior to 1/1/81 | | Subsequent to 1/1/81 |
|---|---|---|---|
| Mary Pauline Finan (before 6/80) | | | |
| Investigation & Research | ------- | 265.25 | ------- |
| | 115.50 | 265.25 | 20.50 |
| Paralegals | | | |
| Jurisdiction | 14.40 | | ------- |
| Case Planning | 2.7 | | ------- |
| | 17.00 | | |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Lee C. Swartz | 146.93 | x | $125.00 | = | $ 18,366.25 |
| Lee C. Swartz | 21.30 | x | 135.00 | = | 2,875.50 |
| Leroy C. Zimmerman | 4.10 | x | 100.00 | = | 410.00 |
| James G. Morgan | .6 | x | 85.00 | = | 51.00 |
| Charles E. Schmidt | 1.2 | x | 50.00 | = | 60.00 |
| Mary Pauline Finan | 265.25 | x | 25.00 | = | 6,631.25 |
| Mary Pauline Finan | 115.50 | x | 50.00 | = | 5,775.00 |
| Mary Pauline Finan | 20.50 | x | 60.00 | = | 1,230.00 |
| Paralegal | 17.0 | x | 25.00 | = | 425.00 |
| | | | | | $ 35,824.00 |

*Bailey and Broder*

After several reviews of the fee petition of Bailey and Broder the court is somewhat at a loss to know what specific contribution the firm made to this class action. The petition states:

Petitioners seek such an award of fees and reimbursement of costs for all of the work performed as a member of the Plaintiffs' Executive Committee and for all of the work performed by the firm prior to its appointment to said Committee. Petitioners' efforts, as a member of the Plaintiffs' Executive Committee and as an individual firm, contributed significantly in the achievement of the highly remunerative proposed settlement of the instant class action proceedings.

In spite of this statement, there is little hard evidence of the firm's significant contribution. The one document this court viewed, an eighteen page brief addressing both subject matter jurisdiction (one page) and certification of a personal injury class, was cursory and duplicative of work being done by other plaintiffs' counsel who were assigned the briefing task by liaison counsel. It was precisely to prevent the expenditure of unnecessary and duplicate hours that liaison counsel was appointed. The court has therefore eliminated from its lodestar calculation for this firm those hours attributable to this unsolicited brief.

Other hours excluded from the calculation went toward the preparation of a complaint filed under the caption *Terry Smith v. Metropolitan Edison Co., et al.,* Civil Action No. 79–0512. The ad damnum clause of the complaint violated one of the court's local rules which prohibits the statement of the amount of unliquidated damages being sought. On April 26, 1979, the day after the complaint was filed, Judge Herman of this court ordered it impounded and instructed counsel to file an amended complaint complying with the court's rules. No

amended complaint was filed and the action was dismissed in July because of the firm's refusal to follow the court's order. Hours devoted to this aborted case did not contribute to the furtherance of the class action and will not be compensated from plaintiffs' settlement fund.

Bailey and Broder has requested reimbursement of expenses in the amount of $12,074.50. The firm, however, has failed to submit any documentation to the court explaining what expenses are included in the amount sought. Thus the court is unable to determine whether the expenses the firm claims to have incurred are legitimate costs of this action. The firm will be given until December 20, 1982 to file an appropriate affidavit relative to their expenses.

The hourly rates of compensation charged by the firm to this class action need some adjustment. When Bailey and Broder became involved in the lawsuit, Magistrate Havas asked them, as he did all other counsel, to submit a statement of their hourly billing rate. The other attorneys who have filed fee petitions responded to this request. Bailey and Broder submitted nothing despite several reminders. One of the reasons the court requested the rate information was to enable it to determine at the outset if fees were exorbitant. Then the court could advise those attorneys submitting higher than reasonable rates that they would not be compensated at the rate requested. Bailey and Broder seeks payment at the following rates:

| | |
|---|---|
| Aaron J. Broder | $350.00 |
| F. Lee Bailey | 350.00 |
| Harry B. Frank | 250.00 |
| Richard Lippes | 200.00 |
| H. Johannes Galley | 150.00 |
| John Palmer | 150.00 |
| Mark A. Sonkin | 125.00 |
| Michael D. Ballen | 125.00 |
| Laura S. Pitchal | 125.00 |
| Richard Weiss | 125.00 |
| Stephen Buchalter | 100.00 |
| Lester J. Kravitz | 100.00 |

The introduction to the explanation of how these rates were set begins:

As the Court is well aware, the Lodestar Fee of Petitioning Counsel consists of compensable hours multiplied by the standard hourly rates of counsel for non-contingent matters. However, as was indicated to the Court previously, although the Bailey and Broder firm has been engaged in a significant number of major litigations, at both national and international levels, we have traditionally and exclusively proceeded on a contingency, as opposed to an hourly fee basis. Quite simply, the Bailey and Broder firm is not organized in the fashion of a firm which maintains time records to be employed for billing at an hourly rate. However, we have attempted to institute a system to compile and maintain accurate records of the time expended in connection with this litigation.

In this regard, the Court is respectfully requested to consider that the time records annexed hereto do not reflect the countless hours expended by the attorneys in our firm in numerous conferences and discussions to analyze and brainstorm the varying aspects and multiple issues which arose during the course of the Three Mile Island litigation. Suffice it to say that it would be virtually impossible to maintain an accurate and complete record of such time expended.

This statement is followed by a declaration of high overhead expenses and some background information on the attorneys who are included in the rate request. The petition continues:

In view of the factors enumerated above, we have attempted to compute an hourly billing rate for the calculation of the lodestar amount predicated upon a fair appraisal of the reasonable value of our services in handling this type of complex litigation on a contingency basis.

The court takes this as a statement that the firm does not have an established hourly billing rate. It must also be considered as an admission that counsel in the firm are inexperienced in the class action field. The Second Circuit which encompasses New York City, home of the Bailey and Broder firm, also requires hourly rates and a "lodestar" calculation for class action compensa-

tion. *City of Detroit v. Grinnell Corporation,* 560 F.2d 1093 (2d Cir.1977).

There is no affidavit in support of the Bailey and Broder fee petition. No evidence of the reasonable hourly rate for attorneys of petitioners' experience practicing in New York has been filed with the court. Faced with this void, the court will evaluate the rates in light of the affidavits filed by Philadelphia counsel. New York rates are probably higher, but counsel have failed to substantiate their request. The majority of the time spent by Bailey and Broder members working on this litigation was spent during the first year. Using historic rates for the Philadelphia area the court will approve the following hourly rates as reasonable:

| | |
|---|---|
| Aaron J. Broder | $200.00 |
| Harry B. Frank | 150.00 |
| Richard Lippes | 125.00 |
| H. Johannes Galley | 90.00 |
| John Palmer | 90.00 |
| Mark A. Sonkin | 80.00 |
| Michael D. Ballen | 80.00 |
| Richard Weiss | 80.00 |
| Stephen Buchalter | 70.00 |
| Lester J. Kravitz | 70.00 |

The time approved as reasonable for each compensable endeavor on which the firm worked is:

| Attorney | Hours |
|---|---|
| Aaron J. Broder | |
| Class Action Proceedings | 31.25 |
| Investigation & Research | 17.75 |
| Notice & Claim Forms | 2.0 |
| Case Planning | 1.25 |
| Settlement Administration | 5.05 |
| | 57.30 |
| | |
| Harry B. Frank | |
| Class Action Proceedings | 1.50 |
| Case Planning | 3.50 |
| Settlement Administration | .30 |
| | 5.30 |
| | |
| Richard Lippes | |
| Class Action Proceedings | 43.30 |
| Investigation & Research | 4.58 |

| Attorney | Hours |
|---|---|
| Case Planning | 35.66 |
| NRC Activities | 4.25 |
| Travel | 8.0 |
| | 95.79 |
| | |
| H. Johannes Galley | |
| Investigation & Research | .50 |
| Case Planning | 9.75 |
| Travel | 4.0 |
| | 14.25 |
| | |
| John Palmer | |
| Case Planning | 6.0 |
| Travel | 4.0 |
| | 10.0 |
| | |
| Mark A. Sonkin | |
| Class Action Proceedings | 54.60 |
| Investigation & Research | 19.75 |
| Notice & Claim Forms | 6.5 |
| Case Planning | 5.75 |
| Document Review | .25 |
| NRC Activities | 3.0 |
| Travel | 7.0 |
| Settlement Administration | 6.0 |
| | 102.85 |
| | |
| Michael D. Ballen | |
| Class Action Proceedings | 17.50 |
| Investigation & Research | .50 |
| Notice & Claim Forms | 1.0 |
| Case Planning | 29.50 |
| NRC Activities | 2.25 |
| Travel | 16.0 |
| | 66.75 |
| | |
| Richard Weiss | |
| Class Action Proceedings | 28.72 |
| Case Planning | 11.03 |
| Travel | 15.30 |
| | 55.05 |
| | |
| Stephen Buchalter | |
| Class Action Proceedings | .50 |
| Case Planning | 2.0 |
| Travel | 4.0 |
| | 6.50 |
| | |
| Lester J. Kravitz | |
| Case Planning | 1.0 |
| Travel | 4.0 |
| | 5.0 |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Aaron J. Broder | 57.30 | x | $200.00 | = | $11,460.00 |
| Harry B. Frank | 5.30 | x | 150.00 | = | 795.00 |
| Richard Lippes | 95.79 | x | 125.00 | = | 11,973.75 |
| H. Johannes Galley | 14.25 | x | 90.00 | = | 1,282.50 |
| John Palmer | 10.0 | x | 90.00 | = | 900.00 |
| Mark A. Sonkin | 102.85 | x | 80.00 | = | 8,228.00 |
| Michael D. Ballen | 66.75 | x | 80.00 | = | 5,340.00 |
| Richard Weiss | 55.05 | x | 80.00 | = | 4,404.00 |
| Stephen Buchalter | 6.50 | x | 70.00 | = | 455.00 |
| Lester J. Kravitz | 5.0 | x | 70.00 | = | 350.00 |
| | | | | | $45,188.25 |

*Beasley, Hewson, Casey, Colleran, Erbstein and Thistle*

The firm of Beasley, Hewson, Casey, Colleran, Erbstein and Thistle became involved in the TMI litigation by filing a class action complaint on behalf of residents of the Middletown area. One of its clients, Beverly Gorman, testified at the class certification hearing on the physical and psychological impact of the incident upon her. Daniel Thistle, a firm member, served on plaintiffs' executive committee. His work was primarily in the area of establishing causation and proof of medical injuries. In furtherance of this assignment he consulted with an expert in nuclear medicine about detection of the health effects of low level radiation. He also reviewed a number of technical reports on the medical aspects of the case.

Approval of the following hourly rates is sought by the firm:

| | |
|---|---|
| William C. Hewson, M.D. | $200.00 |
| Daniel L. Thistle | 150.00 |
| Paralegal hours | 15.00 |

These are reasonable charges for individuals with comparable experience practicing in the Philadelphia area.

Though the rates are reasonable, the hours which Daniel Thistle attributes to his work in furtherance of this litigation are unreasonable. For example many letter reviews took one hour. Telephone calls were lengthy. The court counted thirty and one-half hours listed as reviewing various defendants' answers in different TMI lawsuits. Most of the answers are nearly identical. They consist of three pages and can be characterized as general denials of the substantive factual allegations. No more than three hours should have been spent reviewing answers.

Furthermore, on November 9th and 12th of 1979 Thistle spent eight hours reviewing plaintiffs' 48 page brief on subject matter jurisdiction. If he were proofreading and drafting proposed changes or suggestions in this brief the time might be justified. The brief, however, was filed with the court on November 5, 1979. No changes could be made. The issue was uncontested, so the reading cannot be justified as preparatory to a reply to an opposition brief. Nevertheless, the issue must have fascinated Thistle because he also spent nine hours reading defendants' memorandum on the same subject and another two hours on a review of a corrected copy of plaintiffs' brief on jurisdiction. This was after spending seven hours reading two other very cursory memoranda filed by other firms on the subject of jurisdiction. In all a total of 26 hours was spent perusing documents already filed with the court.

These are just two blatant examples of work that did little or nothing to further the prosecution of the class action. After a careful review of the petition, the court concludes that approximately fifty percent of the time claimed by Thistle was reasonable in light of his contribution to this lawsuit. A total of 469.8 hours will be approved.

The hours spent by Dr. Hewson on the case and those spent by paralegals will be approved.

The only time records reflecting the work of James E. Beasley are four entries in the

period from May 3, 1979 through July 13, 1979 designated as "strategy" with no further explanation. It has been the court's experience that this "strategy" category, when there is no other involvement in the lawsuit, usually denotes jockeying for position or assignments on the plaintiffs' executive committee. The time period to which it is charged coincides with the organization of counsel representing plaintiffs. Such time does not further the prosecution of the class action and will not be approved.

| Attorney | Hours |
|---|---|
| Daniel L. Thistle | |
| Class Action Proceedings | 68.90 |
| Investigation & Research | 489.20 |

| Attorney | Hours |
|---|---|
| Notice & Claim Forms | 42.90 |
| Case Planning | 129.0 |
| Settlement | 13.70 |
| Pleadings | 12.25 |
| Jurisdiction | 2.0 |
| Document Review | 155.15 |
| NRC Activities | 11.50 |
| Travel | 11.0 |
| Court Appearances | 4.0 |
| | 939.6 |
| Adjusted (Per p. 40) | 469.8 |
| William C. Hewson | |
| Investigation & Research | 5.0 |
| Paralegals | |
| Investigation & Research | 60.0 |

The lodestar for Beasley, Hewson, Casey, Colleran, Erbstein and Thistle is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Daniel L. Thistle | 469.8 | x | $150.00 | = | $70,470.00 |
| William C. Hewson | 5.0 | x | 200.00 | = | 1,000.00 |
| Paralegals | 60.0 | x | 15.00 | = | 900.00 |
| | | | | | $72,370.00 |

Expenses advanced for the litigation in the amount of $8,733.32 will be approved as reasonable.

*Stoll & Stoll, P.C.*

On May 11, 1979 this firm from Portland, Oregon jumped on the TMI bandwagon by filing a class action complaint. It was at least the tenth complaint filed following the March 28 nuclear accident. The firm represents publicly owned electrical utilities in the Pacific Northwest. Some of these operate nuclear power plants. Because of questions about a conflict of interest in both suing and representing utilities operating nuclear facilities, Stoll and Stoll ceased its involvement in the case before the end of June 1979. Still the firm seeks $56,183.50 as compensation for attorney and paralegal time and expenses in the amount of $1429.42. It justifies its request with the following statement:

With respect to our withdrawal from the case, we would like to point out two important factors. First, the initial work done by this firm was not duplicated by Barrack, Rodos & McMahon. Most of this firm's work involved legal research into the definition of an extraordinary nuclear occurrence, the application of the Price Anderson Act, and contact with governmental agencies with respect to defining this incident as an extraordinary nuclear occurrence. Subsequent to our involvement, other counsel built upon our research and our initial contact with governmental agencies.

The court has grave reservations about awarding any compensation to this firm. It is unreasonable for a firm a continent away to believe that it could better serve class plaintiffs compared to experienced class action attorneys in the metropolitan areas found within Pennsylvania's borders. Several firms with such a background had already filed lawsuits in this court before the Stoll and Stoll class complaint arrived. Moreover, the petition speaks of the firm's knowledge of the Price-Anderson Act, but anyone with a working acquaintance with that act realizes that the law was designed so that lawsuits arising out of nuclear inci-

dents would be governed by state tort law. Surely Stoll and Stoll claims no expertise in Pennsylvania tort law.

After a careful review of the petition the court found some hours, particularly those devoted to Nuclear Regulatory Commission matters, which probably did contribute to the furtherance of the class action in its early stages. Hours spent preparing the fee petition, dealing with private clients in the post-settlement phase of the case and researching the conflict of interest problem which was peculiar to Stoll and Stoll will not be approved for compensation. No hours will be included in the attorneys' fee award which post-date Stoll and Stoll's withdrawal from the case.

Some hours will be eliminated because the time devoted to the activity was unreasonable. For example, between May 19 and June 18 of 1979 N. Robert Stoll reports spending 31.70 hours on matters related to the organization of plaintiffs' committee. That role was assigned to David Berger and, although it was expected that other firms would devote some time to making suggestions on the organization at issue, the time Stoll and Stoll spent in this endeavor is excessive. Only fifty percent of that time will be approved. The firm reports that it used 24.10 hours to prepare a complaint. On April 27, 1979 one of the firm's attorneys had a copy of the complaint filed by the Berger firm. With a model for guidance, the time invested in the complaint activity, particularly the amount spent talking about the complaint, exceeds that reasonably necessary. It will be reduced by one-third. The court will also delete hours attributed to the preparation of a memorandum supporting the appointment of Stoll and Stoll as lead counsel. These hours were expended for the enhancement of Stoll and Stoll and cannot be said to have contributed to plaintiffs' recovery.

The following time will be approved as reasonable:

| Attorney | Hours |
|---|---|
| **Alan Larsen** | |
| Pleadings | 11.9 |
| Investigation & Research | 19.4 |
| Case Planning | 4.9 |
| Document Review | 1.7 |
| NRC Activities | 22.8 |
| | 60.7 |
| **N. Robert Stoll** | |
| Pleadings | 1.7 |
| Investigation & Research | 12.15 |
| Case Planning | 25.7 |
| Travel | 21.65 |
| | 61.2 |
| **J. Richard Baxendale** | |
| Investigation & Research | 22.5 |
| Case Planning | 9.95 |
| NRC Activities | 7.8 |
| | 40.25 |
| **Norman A. Stoll** | |
| Investigation & Research | 2.4 |
| Case Planning | 2.2 |
| | 4.6 |
| **Vawter Parker, Jr.** | |
| Investigation & Research | 3.9 |
| NRC Activities | .5 |
| | 4.4 |
| **Gary Berne** | |
| Pleadings | 2.5 |
| Case Planning | 1.15 |
| | 3.65 |

The hourly rates requested by Stoll and Stoll in their petition are described as "current." They are not the same as the historic rate submitted to Magistrate Havas at the outset of the litigation. It is the following historic rates which will be approved as reasonable:

| | |
|---|---|
| Norman A. Stoll | $125.00 |
| N. Robert Stoll | 100.00 |
| J. Richard Baxendale | 80.00 |
| Vawter Parker, Jr. | 75.00 |
| Alan Larsen | 70.00 |
| Gary Berne | 65.00 |

The lodestar fee which the court authorizes is determined as follows:

| Attorney | Hours | | Hourly rate | | Amount |
|---|---|---|---|---|---|
| Norman A. Stoll | 4.6 | x | $125.00 | = | $   575.00 |
| N. Robert Stoll | 61.2 | x | 100.00 | = | 6120.00 |
| J. Richard Baxendale | 40.25 | x | 80.00 | = | 3220.00 |
| Vawter Parker, Jr. | 4.4 | x | 75.00 | = | 330.00 |
| Alan Larsen | 60.7 | x | 70.00 | = | 4249.00 |
| Gary Berne | 3.65 | x | 65.00 | = | 237.25 |
| | | | | | $14,731.25 |

Given the short duration of Stoll and Stoll's involvement in the case and their minimal contribution to the ultimate recovery, no multiplier will be applied to the lodestar amount. Expenses in the amount of $1429.42 will be reimbursed.

*Multiplier*

After the lodestar amount for the participants has been calculated, the court may increase the award by a multiplier to take account of contingency and quality factors present in the case.

In *Lindy II,* the court defined the factors to be considered in determining the "contingent nature of success":

1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove.

2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.

3. The delay in receipt of payment for services rendered. *Lindy II, supra.*

This case was certainly complex factually in that highly technical data on the reactor operations, the nature of the releases during the incident and the scientific research on radiation effects are not within the range of expertise normally acquired by an attorney. There were several questions of first impression involved because this was the first major nuclear accident calling for interpretation of areas of the Price-Anderson Act.

The probabilities of defendants' liability was an open question at the outset of the case. The causes of the accident were fully explored by various federal and state groups. Plaintiffs had the benefit of these proceedings and investigations. Defendants would have had difficulty challenging allegations that their personnel or equipment were at fault in the incident. Liability, however, encompasses both causation and legal responsibility for the damages. This court recently decided in other TMI cases, *In re TMI Litigation-Governmental Entities Claims,* 544 F.Supp. 853 (1982), that economic losses which are not accompanied by physical injury or damage to property are not compensable losses under Pennsylvania law. Defendants' liability to those in Classes I and II who suffered no personal or property injuries has been doubtful from the time these cases were filed.

The difficulty of proving damages in this action ranges from easy for those trying to recoup evacuation expenses and attendant wage/salary losses, to complicated for some businesses that believe they suffered long time declines due to the incident. Probably eighty percent of the claims are straightforward and relatively simple to prove.

Under the category "risks assumed in developing the case," there were a substantial number of hours of labor invested without certainty of payment. This can be seen in the above listing of the hours expended by the law firms prosecuting the case. As discussed above, there were also legal issues in the lawsuit which may have precluded any recovery for the bulk of the economic loss claims. Expenses were high particularly because of the need to hire expert consultants to advise on case development where technical knowledge was essential. Certainly some of the counsel also contributed special legal skills acquired by conducting other class action litigation. There has also been a delay in payment of two to three years for the majority of the services rendered in the case. In light of all these factors the court finds that counsel should be awarded a multiplier of 1.5 to compensate for the contingent element of the case.

The quality factor is to be considered separately. *Lindy II* instructs:

"Any increase or decrease in fees for the quality of work is designed to take account of an unusual degree of skills, be it unusually poor or unusually good." [*Lindy I*, 487 F.2d at 168.] By this is meant simply that the district court may determine that the lawyer discharged the professional burden undertaken *with a degree of skill above or below that expected for lawyers of the caliber reflected in the hourly rates.* As previously rehearsed, we do not intend that this evaluation entail a detailed analysis of the lawyer's performance in each category of services rendered. Rather, the increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. *The heavy burden of proving entitlement to such an adjustment is on the moving party. Lindy II, supra* at 118. (Emphasis supplied)

There were some very fine legal contributions during the course of this lawsuit. The court has attempted to note some of them in its discussion of the work of each firm. The efforts of David Berger were particularly outstanding in negotiating a settlement. While the court believes that the quality of David Berger's work is reflected in his $250.00 hourly rate (two and a half times the average hourly rate approved in this action), the complexity of the issues, particularly with respect to the Class III claims made negotiations difficult even for an attorney of Mr. Berger's caliber. The innovative results achieved in the settlement are therefore to be commended. In addition, the Berger firm has been the principal counsel for plaintiffs in these proceedings since the inception of the consolidated litigation. As plaintiffs' liaison counsel, the Berger firm has been involved and has taken the lead role in all aspects of the litigation and liaison matters with defense counsel and the court. For these reasons an additional .25 multiplier will be awarded to the Berger firm for the quality factor. No adjustment of the lodestar amount will be allocated on the quality element to any other firm.

It should be noted that, though plaintiffs achieved a good settlement given the legal obstacles they faced, they did expend a tremendous number of hours to bring about this result. There was a weakness of coordination between firms which resulted in a certain amount of duplication of efforts and less efficiency. The court was unable to determine exactly who was responsible for the duplication and make appropriate deductions. But it believes that the failure of coordination and communication detracted from what was a fine effort in many other respects.

The multiplier which the court authorizes for each firm is determined as follows:

| Firm | Total Hourly fee | Multiplier | Amount |
|------|------|------|------|
| David Berger, P.A. | $694,503.00 | 2.00 | $1,389,006.50 |
| Jameson & Milspaw | 75,603.00 | 1.5 | 113,404.50 |
| Stock and Leader | 61,987.15 | 1.5 | 92,980.73 |
| Barrack, Rodos, et al | 52,386.75 | 1.5 | 78,580.13 |
| Barry A. Roth | 31,266.00 | 1.5 | 46,899.00 |
| Cohen, Shapiro, et al | 52,207.39 | 1.5 | 78,311.09 |

| Firm | Total Hourly fee | Multiplier | Amount |
|---|---|---|---|
| Adler, Barish, et al | 149,128.75 | 1.5 | 233,693.13 |
| Hepford, Swartz, et al | 35,824.00 | 1.5 | 53,736.00 |
| Bailey and Broder | 45,188.25 | 1.5 | 67,782.38 |
| Beasley, Hewson, et al | 72,370.00 | 1.5 | 108,555.00 |
| | | | $2,262,948.46 |

The legal notice of class action and proposed settlement provided that the hearing scheduled for August 24, 1981 would include the hearing of objections to all or any part of the petitions filed for attorneys fees and expenses. Written notice of intention to appear at the hearing was required. Any written objections that were filed to either the proposed settlement or the petition for attorneys' fees and cost were required to set forth the basis or bases for the objections.

Two letters were filed containing objections to the attorneys' fee petitions. One was filed by A.M. Petrosky. His objection was directed to the payment of the fees from the fund. He suggested that they be paid from a separate fund. Another objection was filed by Gary Waxman, who objected to the excessiveness of the fees. Neither party raised these objections at the hearing. The court has considered these objections and believes they have been addressed in the foregoing memorandum.

An appropriate order will be entered.

## ORDER

IT IS HEREBY ORDERED THAT:

1. All interested parties having been given notice and an opportunity to be heard, the court finds that the fees and expenses set out below are fair, reasonable and proper.

2. The following fees and expenses are approved, awarded and ordered to be paid:

| Firm | Amount |
|---|---|
| David Berger, P.A. | $1,389,006.50 |
| Expenses | 176,056.94 |
| Time Reports (per memorandum, p. 10) | 20,112.50 |
| Jameson and Milspaw | 113,404.50 |
| Expenses | 4,957.68 |
| Stock and Leader | 92,980.73 |
| Expenses | 8,743.16 |
| Barrack, Rodos and McMahon | 78,580.13 |
| Expenses | 7,022.23 |
| Barry A. Roth | 46,899.00 |
| Expenses | 3,601.79 |
| Cohen, Shapiro, Polisher, Shiekman & Cohen | 78,311.09 |
| Expenses | 12,897.46 |
| Adler, Barish, Levin and Creskoff | 233,693.13 |
| Expenses | 13,859.13 |
| Hepford, Swartz, Menaker and Wilt | 53,736.00 |
| Expenses | 6,215.64 |
| Bailey and Broder | 67,782.38 |
| Beasley, Hewson, Casey, Colleran, Erbstein and Thistle | 108,555.00 |
| Expenses | 8,733.32 |
| Stoll and Stoll | 14,731.25 |
| Expenses | 1,429.42 |

The Adler firm will be given until December 20, 1982 to file with the court the appropriate biographical affidavit on Barbara E. Sarkin and Claudia Tesoro.

The Swartz firm will be given until December 20, 1982 to file the appropriate affidavit for Charles E. Schmidt.

The Bailey and Broder firm will be given until December 20, 1982 to file the appropriate affidavit relative to their expenses.

## APPENDIX A

UNITED STATES MAGISTRATE

UNITED STATES DISTRICT

MIDDLE DISTRICT OF PENNSYLVANIA

HARRISBURG, PENNSYLVANIA

JOHN HAVAS
UNITED STATES MAGISTRATE

UNITED STATES COURT HOUSE
P. O. BOX 827
HARRISBURG, PENNSYLVANIA 17108
TEL: (717) 782–4991

February 13, 1980

David Berger, Esquire

1622 Locust Street

Philadelphia, Pennsylvania 19103

Re: Three Mile Island Litigation

Dear Mr. Berger:

I have carefully reviewed the time records which you submitted to me with your cover letter of January 28, 1980. As you are well aware, in your capacity as liason counsel one of your jobs is to assure efficient use of Plaintiffs' attorneys' time. In certain respects, the time records which you have forwarded to me reflect some inefficiencies, including the following:

1. At Executive Committee meetings and pretrial conferences some firms on the Executive Committee have sent as many as three or four attorneys to represent them. With the exception of your firm, which probably should send two representatives to such meetings and conferences due to your status as liason counsel, there appears to be no good reason why more than one member of each firm should attend such meetings and conferences;

2. Travel time is not distinguished from other time, such as time actually spent at an Executive Committee meeting or a pretrial conference. It should be;

3. There is too much duplication of efforts in reviewing documents filed by the Executive Committee. There are perhaps 50 attorneys working on the TMI action among the 10 Plaintiffs' Executive Committee members. Each document to be filed by the Executive Committee should *not* have to be reviewed by all 50 attorneys. While I can understand that *one member of each firm* on the Executive Committee should be permitted billable time to cursorily review each document filed on behalf of the Plaintiffs, any review beyond one attorney from each firm will not be deemed efficient or necessary. Your proposal of 10 Executive Committee members assumes that you believe each member is capable, and that all can work efficiently together. It is contradictory to these assumptions that all attorneys feel it necessary to review the work assignments carried out by other members of the Executive Committee;

4. The time sheets do not reflect in a readily compilated manner the time expended by the Executive Committee members on *each project*. This fact leads me to believe that you, as liason counsel, will have to more firmly monitor the time and efforts expended on each assigned project. This fact, together with the excessive number of hours expended on apparently *un* assigned projects, leads me to believe that you also will have to exercise more central control generally over the supposedly coordinated and efficient efforts of the Executive Committee. So that there is no mistake as to what I expect in this regard, I will set forth the following example. We will be interested in knowing just how many hours the Executive Committee has expended on exceptions to my recent report on Class III certification. In one central time compilation these hours on an attorney-by-attorney basis should be set forth under the heading "Exceptions to Report of Magistrate of January 24, 1980 and Brief Thereon". By having such a compilation readily in front of me I will not have to review each and every time sheet of each Executive Committee member and extrapolate the number of hours expended on this project in order to determine the total number of hours expended thereon; and

5. Many of the Executive Committee members utilized a very poor time sheet format for our purposes. What I would like from you is a format which readily sets forth the total number of hours expended by the whole Executive Committee for the given time period, with a breakdown on a project-by-project, firm-by-firm, attorney-by-attorney basis. Any hours which do not fall within a specified project, and these should *not* be all that many, should be described in a very detailed manner. For instance, the heading "Case Strategy" is *not* sufficiently detailed to demonstrate how certain hours were expended. Rather, such time expenditures should note the exact nature of each phone call, writing and

research expended under such a euphemistic heading.

As an experienced class action attorney I need not advise you about the court's discretion in respect to attorneys' fees in class action matters. I am sure you also are aware that courts throughout the country are becoming increasingly more concerned and more involved with attorneys' fees generally. Recently, in 48 L.W. 1117, issued February 5, 1980, I read that in the case of BROWN v. STACKLER [612 F.2d 1057] (7th Cir.1980), decided January 21, 1980, the Seventh Circuit held that where a plaintiff's counsel in a civil rights action claimed an amount of billable hours which the court deemed "outrageous" for the work actually performed the court sanctioned said counsel by awarding him *no* attorney's fees whatsoever. This case is not only indicative of the growing judicial concern over attorneys' fees, but also is indicative of the expanded *use* of the powers of the court to do something about these concerns.

The initial time sheets reflect a good deal of inefficient time and duplication of efforts. It will be my recommendation to the court that no inefficient time expended by Executive Committee members should be compensated when this case is brought to a conclusion. Similarly, I can assure you and all other members of the Executive Committee that I intend to very closely scrutinize all time records.

In order to assist you in understanding the time sheet format which I desire you to utilize I am enclosing a sample of what is expected. If you have any questions concerning the format desired please do not hesitate to contact me. I hope this letter finds you well.

> Very truly yours,
> /s/ John Havas
> John Havas
> United States Magistrate

cc: Honorable Sylvia H. Rambo
Jameson & Milspaw
Adler, Barish, Daniels, Levin & Creskoff
Cohen, Shapiro, Polisher, Shiekman & Cohen
Hepford, Zimmerman & Swartz
Stock & Leader
Daniel L. Thistle, Esquire
Barrack, Rodos & McMahon
Barry A. Roth, Esquire
Bailey & Broder

TIME EXPENDED BY PLAINTIFFS'
EXECUTIVE COMMITTEE
FROM
JANUARY 1, 1980
TO
FEBRUARY 1, 1980

I. Exceptions to Report of Magistrate of January 24, 1980 and brief thereon.

  A. ABC Firm

    1. Attorney A

      a. January 26, 1980 — Draft exceptions to Magistrate's recommendation on subclass 1 –         5.0 hrs.

    2. Attorney B

      a. January 29, 1980 — Draft exceptions to Magistrate's recommendation on subclass 2 –         5.2

    3. Attorney C

      a. January 28, 1980 — Draft exceptions to Magistrate's recommendation on subclass 3 –        <u>3.1</u>    13.3

B.  XYZ Firm

  1.  Attorney X

    a.  January 25, 1980 – Draft brief in support of exceptions to Magistrate's recommenmendation on subclass 1 –    10.3

  2.  Attorney Y

    a.  January 27, 1980 – Draft brief in support of exceptions to Magistrate's recommendation on subclass 2 –    4.2

  3.  Attorney Z

    a.  January 29, 1980 – Draft brief in support of exceptions to Magistrate's recommendation on subclass 3 –    <u>7.5</u>    <u>22.0</u>

          <u>35.3 hrs.</u>

II.  Notice and Claim Forms

  A.  DEF Firm

    1.  Attorney D

      a.  Research Rule 23 notification requirements    3.1 hrs.

    2.  Attorney E

      a.  Draft proposed claim forms    3.2

    3.  Attorney F

      a.  Confer with Defendants' counsel on claim form format    <u>2.6</u>    <u>8.9</u>

(Etc.)

III.  Miscellaneous

(Under this heading all time expended which does not come within the perimeters of an assigned project heading should be very specifically delineated on a firm-by-firm, attorney-by-attorney, hour-by-hour, telephone call-by-telephone call, writing-by-writing, research-by-research, etc. basis so that I can ascertain exactly what was done. To avoid duplication these miscellaneous entries should *not* include any time expended on assigned projects delineated above.)

TOTAL   _____